The State of Ohio, Appellee, *v.* Robinson, Appellant.

(No. 75AP-130—Decided August 26, 1975.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Messrs. Tyack, Scott & Colley* and *Mr. John P. Bessey,* for appellant.

Reilly, J. This is an appeal from a judgment and sentence of the Court of Common Pleas, Franklin County, Ohio. Appellant (hereinafter called defendant) was charged with aggravated murder, resulting from the shooting death of his nephew, Ronald R. Robinson (hereinafter called the deceased), June 29, 1974. The case was tried to a jury January 27, 1975. There were eight witnesses for the state of Ohio (hereinafter designated state), eight witnesses for defendant, and three rebuttal witnesses for the state.

The state's first witness, Dr. Emery Van Hamm, testified that the deceased died from a gunshot wound in the head. He also testified that the deceased was intoxicated at the time, and that the alcohol's effects were increased by amphetamines. The doctor testified that the deceased was a large, muscular man about six feet tall, weighing 200 pounds. The state's next witness was

Detective Dennis Canada, who testified concerning his investigation at the scene of the incident, defendant's home at 227 North Eureka Avenue, Columbus, Ohio. He showed pictures of a holster upon an upstairs bed, described the living room where the shooting occurred, and indicated the position of the deceased's body when he arrived. Mr. Hermann Motter and his son David were working upon the front of defendant's house, doing cement work, when the shooting happened. They testified that the deceased drove a Mustang automobile to the front of the house, left his car, with a beer bottle in his hand, walked into the defendant's house, and later came out and sat on the porch. Both stated that they did not pay much attention to the situation, as ordinarily they ignored people who were drinking. However, they testified that subsequently they heard someone say: "If you don't get out of here, I'll shoot you!" Officer David Morris testified that the inventory of deceased's pockets disclosed no weapons.

Officer Bruce Morgan described the scene in his investigation. He volunteered that when he arrived the defendant was "brushing his teeth." He stated: "I think the purpose of that, maybe, was to get the odor of alcohol from his breath." This comment brought upon a motion for a mistrial, which was overruled. The court admonished the officer to answer the questions as asked, and directed that the gratuitous testimony be stricken. Officer Morgan testified that the defendant said he had shot his nephew for fear of his life. Officer Donald Corbin also summarized his part in the investigation. Mrs. Elizabeth Robinson, the deceased's widow, said that her husband did not come home from his night shift at Buckeye Steel, June 29, 1975. She conceded that the deceased took "nerve pills" and drank alcohol. She also testified that she was aware defendant owned a gun. The state's final witness, Richard C. Fisher, criminologist for the city of Columbus, with headquarters in the crime laboratory, stated that the weapon used in the shooting would not automatically discharge.

The trial court reduced the charges from aggravated murder to murder, upon a motion of counsel for defendant,

at the close of the state's case. The defendant's case included seven witnesses, in addition to his own testimony. There was evidence that defendant and the deceased had a disagreement prior to the crime. Further, the record indicates the deceased had said he was going to "get him [the defendant] one way or another." Charles Siders, a neighbor, testified that just before the shooting he heard a car stop, with tires squealing and gravel flying, and that a man with a beer bottle got out, went up to defendant's house, and entered. Mrs. George Robinson, defendant's wife, Vernon Burnett, and defendant, all stated that they were in the basement when they heard a noise upstairs. Mrs. Robinson went up to see who it was. The two men remained downstairs, continuing their work on the plumbing. The deceased came downstairs, and there was an altercation between him and the defendant. There is some conflict as to what actually happened, but the two men went upstairs; defendant went upstairs to get his gun, and the shooting occurred. The latter called the police. Carl Robinson, a cousin of the deceased, testified concerning a time when he and the deceased engaged in a fight, and the deceased apparently used a knife upon him. Don Vest, an employee of defendant, testified concerning an incident when the defendant and the deceased and Mr. Vest were out drinking together. He stated that the deceased became angry and pushed him into a brick wall.

The state, as noted above, called three rebuttal witnesses. Two police officers indicated that the information given by Mrs. George Robinson and Mr. Burnett the day of the shooting was somewhat different from their court testimony. Further, Mrs. Ronald Robinson, the decedent's wife, gave a different version of an incident when defendant and Mrs. Robinson were allegedly threatened by the deceased with a butcher knife.

At the close of the evidence, the defendant moved for acquittal. The motion was overruled. Counsel for defendant objected to several parts of the court's charge. After the jury retired, it requested the court to repeat the charge. The court refused to repeat the entire charge, but charged

upon voluntary manslaughter, and self-defense, as quoted below. Counsel for defendant reiterated the previous objections. Subsequently, the jury returned a verdict of guilty of voluntary manslaughter. Whereupon, appellant perfected this appeal, including four assignments of error. Appellant's first assignment of error is the following:

"The trial court committed prejudicial error when it charged the jury that the defendant had the burden of establishing self-defense by a preponderance of the evidence."

The record shows that the trial court, over defense counsel's objection, charged the jury that in this case defendant had the burden of establishing self-defense by a preponderance of the evidence. The state's evidence, however, tended to prove that the defendant acted in self-defense. For instance, Officer Bruce Morgan testified that "he [the defendant] said he shot his nephew for fear of his life." Further, there was evidence in the state's case, as noted above, which showed the deceased was a large, powerful man, who was drunk at the time of the shooting, which condition was amplified by amphetamines. This court is necessarily governed by the prevailing case law, particularly in this jurisdiction, and this fact pattern strikes directly within this court's recent unreported decision in *State* v. *Matthews*, No. 74AP-428, decided December 24, 1974, to wit:

"Accordingly, even where the burden is upon defendant to prove self-defense by a preponderance of the evidence, if the state's evidence tends to prove that the defendant acted in self-defense, the defendant should be found not guilty unless such evidence that the defendant acted in self-defense is equalled or balanced by other evidence.

"It further appears that, by the enactment of R. C. 2901.05(A), the General Assembly has seen fit to change the rule as to the burden being upon the defendant to prove affirmative defenses by a preponderance of the evidence and to limit the defendant's burden to 'going forward with the evidence of an affirmative defense.' Such statute supersedes the prior case law that the burden of proving an affirmative defense by a preponderance of the evidence is upon

the defendant. The statute limits the defendant's burden to going forward with the evidence, and, applying the maxim of *expressio unius est exclusio alterius*, there can be no further burden upon defendant, especially since the statute expressly provides that the burden of proof is upon the prosecution, making a clear distinction between 'burden of proof' and 'burden of going forward with the evidence.' We feel that R. C. 2901.05(A) evinces a legislative intent to change the burden of the defendant with respect to affirmative defenses and must give effect to that intent. * * *"

Moreover, even if this case did not fall directly within the *Matthews* decision, R. C. 2901.05(A), noted above, reads as follows:

"Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of *going forward* with the evidence of an affirmative defense is upon the accused." (Emphasis added.)

Therefore, aside from *Matthews*, R. C. 2901.05 plainly points the result. The General Assembly has provided that a defendant has the burden of *going forward* with the evidence, rather than the burden of proof. It is, of course, noteworthy that the questions to the trial court after the jury had retired indicate there was a conflict between acquittal for self-defense, and a finding of guilty for voluntary manslaughter. Hence, repetition of the charge, within the context of this case, must be determined prejudicial. Finally, we note the excellent supplemental briefs of counsel concerning *Mullaney* v. *Wilbur* (1975), 421 U. S. 684, 95 S. Ct. 1881. This case, however, is distinguishable because the issue in *Mullaney* was the placing of the burden of proving an essential element upon the defendant, while R. C. 2901.05(A) places only the burden of going forward with the evidence upon the defendant.

Accordingly, for the foregoing reasons, appellant's first assignment of error is sustained.

Appellant's second assignment of error reads as follows:

"The trial court erred in its charge as to the circum-

stances when self-defense is legally justifiable."

· It is apparent that the self-defense issue became dominant in the case. The trial court properly endeavored to comply with the jury's requests. Unfortunately, the succession of charges, which are quoted for illustrative purposes, was virtually certain to be confusing, aside from the matter of error. For instance, the trial court, in its general charge, instructed the jury upon self-defense in the following vein:

"Now, before talking with you about what the state must prove in this case beyond a reasonable doubt, I want to talk with you first of all about the Defendant's claim in this case. And the Defendant has made a claim that he acted in self defense. I want to discuss this defense with you for just a moment.

"In fact, the Defendant admits the fact of the shooting, but maintains it was done in his own defense. Now, the law does provide that in certain circumstances, a person may be justified in taking the life of another; if, in fact, it is in genuine self defense of his own possible death or great bodily harm. Now, a person claiming such a defense, has the burden, under law, and this is called an affirmative defense; he must prove this defense and the elements thereof, by what we call a 'preponderance of the evidence.'

"It is not necessarily the greater quantity of the evidence, but means the quality of the evidence and the evidence relating to the self defense has a greater impact of veracity than evidence to the contrary.

"Now, the reason why I talked about this first, is because if, in fact, the Defendant can establish by such a preponderance of the evidence that it was self defense, as he claims, he would be guilty of no offense whatever. Therefore, the first question you should probably consider is— when is a person entitled to defend himself up to and including the killing of another person? And, secondly, has this Defendant established this right?

"When a person in good faith believes, even though this belief might be mistaken, but in good faith believes that his own life is in imminent danger or that he is in im-

minent danger of great bodily harm, and he has reasonable grounds for the existence of such a belief, and that his only means of escape is to kill his assailant, he will be justified in so doing.

"Now, talking to you about this for a moment. First of all, the defense is not available to a person who starts the fray, that would seem obvious. Nor can it be maintained if he had reasonable opportunity to withdraw and break off the conflict, and did not do so. Or he voluntarily returned to the fray, once it had been concluded.

"The law does not measure precisely the amount of force a person is entitled to use, but it is, also, possible in certain circumstances that an excessive amount of force can be used to repeal the attack. In other words, if a person approaches me with a small stick, I would not be justified in using an amount of force to kill him. The force would be excessive. So, if you use an excessive amount of force to repel the attacker facing you, you do not have available to you the defense of self defense.

"To determine whether or not a person had a reasonable belief, and that reasonable grounds exist for this belief, you must look at all of the circumstances surrounding the incident. You must remember that it is this Defendant's belief that is important, and not what an average or other person might believe under the same or similar circumstances. You would be entitled in this case to consider the size of the parties, whether weapons were used by the assailant, and, if so, were they capable of causing death or great bodily harm. You may, also, consider if the Defendant's use of a loaded pistol to repel his assailant was reasonable under the circumstances.

"If you should find the Defendant has established these elements that he had such a belief, that this belief was reasonable—then he would be justified in killing the person in his self defense, and you would return a verdict of Not Guilty of anything."

Then, in response to the jury's request, the trial court again charged upon self-defense, as follows:

"The Court: Members of the Jury, there has been one

request made that I re-define certain parts of the elements of self defense in order to attempt to make them more understandable. The difference being to make mine previously given herein understandable. At any rate, I will do so in this fashion.

"The defendant claims that what he did was justified on the basis of self defense. If a person is assaulted by another who apparently intends to kill him, the person assaulted is not required to retreat, but may repel force with force. He may kill his assailant if it reasonably appears to the defendant necessary to do so. To constitute self defense, there must be on the part of the defendant a careful use of his faculties and reasonable grounds to honestly believe there was imminent danger to his life or to his person. There must have been a sufficient act coupled with an apparent showing of ability to carry it out to cause the defendant to reasonably believe the other party intended to kill him or do him great bodily harm and that the shooting was, therefore, necessary, to save himself from death or great bodily harm."

Whereupon, the trial court again, in his response to the jury's request, charged upon voluntary manslaughter, and self-defense, as follows:

"The Court: Members of the jury at the close of yesterday's session, you indicated to the court that you wanted a re-definition of two areas. One of which was voluntary manslaughter and the other was the law on self defense.

"I have re-defined the law as it appertains to self defense in this situation, because I do believe because I gave it at two different times there was perhaps some cause for confusion and, perhaps, some of the terminology was not as good as it might have been. I will re-define it for you and you will disregard the prior charge in this regard. Pay attention as I give it to you now as it relates to self defense and voluntary manslaughter.

"The balance of the charge has been given and I presume you can recall it since you have no questions regarding that.

"As it came in the charge, the definition of self defense, I think was first:

"If a person is assaulted and has an honest belief that he is in danger of death or great bodily harm and has reasonable grounds for such belief, he is not required to retreat, but may defend himself even to killing his assailant, if it reasonably appears necessary do (*sic*) do so. This is so, even if he is mistaken in his belief. However, if circumstances change, or are such that the imminent danger is not present, or the reasonable grounds for such a belief would not exist, then a person would not have the right to use deadly force in self defense.

"It is, also, true that an assailant must commit some showing of intention coupled with a present ability to carry it out. Mere threatening words, however vile, will not justify resorting to a deadly weapon."

Consequently, it becomes plain that the trial court initially charged that, in self-defense, the defendant had a duty to retreat. Then the court charged that the defendant may kill his opponent in self-defense if he reasonably believed he intended to kill him; or that the shooting was required to save himself from serious bodily harm or death. The final charge, in effect, instructed the jury that when defendant left the deceased's presence, regardless of the circumstances, it could not find he acted in self-defense. Moreover, it is respectfully noted that the use of a stick as a simile for a beer bottle was a compounding factor in an already confused situation. The net impact of the imminent danger requirement left a finding of guilty of involuntary manslaughter the only rational verdict left to the jury. Therefore, it was prejudicial error, and appellant's second assignment of error must also be sustained.

Appellant's third assignment of error is the following:

"The trial court erred in failing to give the requested charge as to circumstantial evidence."

This, too, is well taken. The issue of intent, or motivation, is necessarily based upon circumstantial evidence. Moreover, the basic Ohio rule is that if a charge is appropriate or pertinent the trial court has a duty to give it. In

this case, the defendant admitted the act, but not the crime. Thus, intent becomes a crucial issue in the case. This is distinguishable from a defense of not guilty because of insanity, which is a confession and avoidance—admitting the crime, but defending upon the ground of not having the requisite intent. In either case, however, intent is a material element. Since circumstantial evidence is necessary to the intent issue, the failure to include a charge upon it, in this case, is prejudicial error. Therefore, appellant's third assignment of error is also sustained.

Appellant's fourth assignment of error is the following:

"The trial court erred in failing to grant a mistrial after the unresponsive answer of Officer Morgan."

As noted above, the jury was instructed by the trial court to disregard the answer. In any event, the totality of the transcript does not indicate any prejudice to defendant from the officer's statement. The declaration of a mistrial is within the sound discretion of the trial court, which was not abused by overruling the defendant's motion. Consequently, the fourth assignment of error is overruled.

In sum, assignments of error one, two, and three are sustained, while the fourth assignment of error is overruled. Therefore, the judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed.*

WHITESIDE and McCORMAC, JJ., concur.

WHITSIDE, J., concurring. While I join in the majority opinion, the change in the law, effected by R. C. 2901.05(A), leads me to add some additional observations.

In *Mullaney* v. *Wilbur* (1975), 421 U. S. 684, 95 S. Ct. 1881, a unanimous United States Supreme Court held that a Maine statute requiring a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter is unconstitutional. Although conceding that

at common law the burden of proving heat of passion on sudden provocation rested on the defendant, the unanimous court held that such common law rule does not comport with the constitutional requirements of due process. *Mullaney* appears to be a harbinger of a similar fate for the common law rule, placing on the defendant the burden of proving self-defense in homicide cases.

In *Mullaney*, the court, at page 1891, equated the burden of proving heat of passion on sudden provocation with that of proving self-defense, stating:

"Nor is the requirement of proving a negative unique in our system of criminal jurisprudence. Maine itself requires the prosecution to prove the absence of self-defense beyond a reasonable doubt. See *State* v. *Millett,* 273 A. 2d 504 (1971). Satisfying this burden imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation. Thus, we discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability."

At page 1892 of the opinion of Justice Powell, it is stated:

"Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result * * *.".

It would seem that the placing of the burden of proving self-defense upon the defendant would be an equally intolerable result. Under such a burden of proof, a defendant can be given a death sentence or a life sentence when the evidence indicates that it is as likely as not that he acted in defense of his life and, thus, deserves no punishment. In footnote 31 of the opinion, speaking of situations where the defendant is required to produce evidence, it is stated in part, at page 1892:

"Since they shift the production burden to the defend-

ant, these devices must satisfy certain due process requirements. * * *

: "In each of these cases, however, the ultimate burden of persuasion by proof beyond a reasonable doubt remained on the prosecution. * * * Shifting the burden of persuasion to the defendant obviously places an even greater strain upon him since he no longer need only present some evidence with respect to the fact at issue; he must affirmatively establish that fact. Accordingly, the Due Process Clause demands more exacting standards before the state may require a defendant to bear this ultimate burden of persuasion. * * *"

The prosecutor in his supplemental brief points out that the Supreme Court has approved of placing the burden upon the defendant of proving the affirmative defense of insanity. Justice Rehnquist, in his concurring opinion in *Mullaney*, discussed and distinguished the defense of insanity, as follows, at page 1893:

"I agree with the Court that *In re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), does require that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant. I see no inconsistency between that holding and the holding of *Leland* v. *Oregon*, 343 U. S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952). In the latter case this Court held that there was no constitutional requirement that the State shoulder the burden of proving the sanity of the defendant.

"The Court noted in *Leland* that the issue of insanity as a defense to a criminal charge was considered by the jury only after it had found that all elements of the offense, including the *mens rea* if any required by state law, had been proven beyond a reasonable doubt. * * * Although as the state court's instructions in *Leland* recognized * * * evidence relevant to insanity as defined by state law may also be relevant to whether the required *mens rea* was present, the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime. For this rea-

son, Oregon's placement of the burden of proof on insanity on Leland, unlike Maine's redefinition of homicide in the instant case, did not effect an unconstitutional shift in the state's traditional burden of proof beyond a reasonable doubt of all necessary elements of the offense. * * * Having once met that rigorous burden of proof that, for example, in a case such as this, the defendant not only killed a fellow human being, but did it with malice aforethought, the state could quite consistently with such a constitutional principle conclude that a defendant who sought to establish the defense of insanity, and thereby escape any punishment whatever for a heinous crime, should bear the laboring oar on such an issue."

With respect to self-defense, unlike insanity, the defense is not considered by the jury only after it has found that all elements of the offense, including *mens rea*, if required, have been proven beyond a reasonable doubt. Rather, the existence or nonexistence of self-defense bears a direct relationship to the existence or nonexistence of the required mental elements of the crime. Although *Mullaney* is factually distinguishable, I can find no logical justification for placing the burden of proving self-defense upon the defendant, if placing the burden of proving that he acted in the heat of passion on sudden provocation is unconstitutional.

As stated in the majority opinion, R. C. 2901.05(A) eliminates this constitutional problem, since it places upon the defendant only the burden of going forward with the evidence of self-defense, thereby abrogating the common law rule that the burden was upon the defendant to prove that he acted in self-defense by a preponderance of the evidence. This result is further emphasized and required by R. C. 2901.05(C)(2), which defines affirmative defense as being one "involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." Thus, the statute recognizes that an affirmative defense is one as to which the defendant "can fairly be required to adduce supporting evidence," rather than one which he is requir-

210

ed. to prove by a preponderance of the evidence.

Even assuming that R. C. 2901.05 can be interpreted as continuing the common law rule in Ohio that the burden of proving self-defense by a preponderance of the evidence is upon the defendant, the interpretation that we have reached, and which the statute, I believe, clearly requires, should be made to avoid the eventual constitutional fate of such common law rule, which *Mullaney* so clearly forebodes.