OPINION
{¶ 1} Defendant-appellant Dennis Payton appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of rape, a felony of the first degree in violation of R.C. 2907.02 (A)(2), one count of kidnapping a felony of the first degree in violation of R.C. 2905.01 (A)(4), two counts of gross sexual imposition, felonies of the fourth degree in violation of R.C. 2907.05 (A)(1) and one count of unlawful sexual conduct with a minor, a felony of the fourth degree in violation of R.C. 2907.04 (A). He further appeals his adjudication as a sexual predator. The plaintiff-appellee is the State of Ohio.
 {¶ 2} On May 23, 2003, a seven count indictment was filed in the Stark County Court of Common Pleas charging defendant-appellant, Dennis C. Payton with the following offenses: two counts of rape, two counts of kidnapping, two counts of gross sexual imposition and one count of unlawful sexual conduct with a minor. The alleged incident on which these charges were based took place on September 7, 2002.
 {¶ 3} A four-day jury trial was held beginning December 8, 2003. During that trial the following evidence was presented.
 {¶ 4} On the night of Friday, September 6, 2002, a small group of teenagers were at the house of 17 year old Lindsay Beltz's parents located on Rockhill Avenue in the City of Alliance, Ohio. In addition to Lindsay the group included her brother, Mike Beltz, her 15 year old cousin, Kayla Beltz, her 18 year old cousin Shaun Beltz, and her 17 year old boyfriend, Ronald Haidet. The group was attempting to find marijuana. Mr. Haidet paged the appellant in order to obtain marijuana from him. In response to that page, appellant returned the call and spoke briefly with both Kayla and Lindsay at that time. Appellant agreed to meet Mr. Haidet and provided him a location for the meeting to take place. However, Mr. Haidet was unable to find the location and subsequently returned to Lindsay's house. Appellant again telephoned Lindsay's house and spoke with Mr. Haidet. The parties agreed to meet the next morning.
 {¶ 5} The next morning, Saturday, September 7, 2002, Mr. Haidet, Lindsay and Kayla went over to the appellant's apartment and smoked marijuana.
 {¶ 6} Sometime between 3:00 and 4:00 p.m. on September 7, 2002, Lindsay and Kayla paged the appellant. He returned the call to Lindsay's house. The purpose of the call was to obtain marijuana. Appellant indicated he could not provide them any marijuana. However, Lindsay and Kayla drove to Mr. Payton's resident that day. Appellant finally agreed to try to obtain more marijuana for them and went with them in Lindsay's car. They returned to Lindsay's house to switch cars because the car that Lindsay was driving did not have air conditioning.
 {¶ 7} Once back at Lindsay's house, Kayla and Mr. Payton got into a white Hyundai Accent which belonged to Lindsay's father. Shaun introduced himself to appellant and wished them luck in obtaining more marijuana for them. Lindsay went inside the house and lied to her father telling him that she was borrowing his car to go to Belden Village Mall. She never mentioned that appellant was with her and her parents never came outside.
 {¶ 8} With Lindsay driving, Kayla sitting in the front passenger seat and the appellant sitting in the backseat, they made a stop at Mr. Payton's house and then drove from Alliance to Canton in search of marijuana. On the drive to Canton, they all smoked marijuana and talked about the rap music CD that appellant had just released.
 {¶ 9} In Canton, they stopped at a residence where a friend of appellant's lived. Mr. Payton went inside while Lindsay and Kayla waited outside in the car. Uneasy about seeing Lindsay and Kayla sitting in the car outside, appellant's friend would not sell any marijuana to him. Appellant returned to the car and told Lindsay and Kayla he could not get any marijuana from his friend at that time. They then drove back to Alliance. Once back in Alliance, they stopped at appellant's residence. They next drove to Bernie's Drive Thru in Alliance where appellant purchased alcohol. After buying the alcohol they drove to a railroad access road located behind 119 West Main Street, an apartment building near downtown Alliance, and parked the car. Appellant had told the girls they would meet his supplier of marijuana at that location.
 {¶ 10} Lindsay started to feel bad about the situation. When Kayla opened the car door to throw out a cigarette butt, appellant yelled at her and told her to "close in the Fing door". Appellant then produced a knife and pointed it at Lindsay's head. He asked the girls which one wanted to die first and that they would have to choose who wanted to die. Appellant then told the girls he wanted to see them kiss and then they could leave. The girls did so hoping the ordeal would end.
 {¶ 11} Appellant accused the girls of being "narcs" who were wearing wires and ordered them to undress. The girls complied with his requests.
 {¶ 12} Appellant then ordered the girls at knife point to perform oral sex on each other. Both girls complied with appellant's orders while he held the knife on them. Appellant told the girls he needed to "get off" so he made Kayla perform fellatio on him. He then had both girls perform this act on him at the same time. Appellant told the girls he was not getting what he wanted and told the girls to drink some alcohol. They complied with this request. The two girls pled with appellant that they would not tell on him, and that he could trust them. Kayla asked the appellant what he would want his daughter to do if she was in this situation. Appellant replied that his daughter had better do what the man wanted.
 {¶ 13} Appellant notified the girls next that one of them would have to have sex with him. Kayla told Lindsay that she should do this since she was on birth control. Lindsay responded that she did not want to do this. Appellant finally settled the dispute by ordering Kayla in the backseat with him since she was being so complicated. Appellant then proceeded to engage in vaginal intercourse with the 15 year old girl while holding the knife on her 17 year old cousin, Lindsay. Kayla began crying and becoming physically ill. Appellant had Lindsay perform oral sex on him until he ejaculated in her mouth. Kayla threw up once or twice outside of the car. Appellant then told the girls to put their clothes on. He then took down Lindsay's personal information from her driver's license for "insurance" so that they would not tell anyone. Lindsay dropped appellant off at his home and the girls drove home.
 {¶ 14} Lindsay waited a week before telling her mother what had happened. She testified she was afraid to notify the police or her parents since appellant had warned them that he would either kill them or have someone else kill them if they told.
 {¶ 15} Appellant was subsequently interviewed by the Alliance Police Department. He admitted to having sex with the girls as described and asserted that it was consensual.
 {¶ 16} At the conclusion of the trial, the jury returned a mixed verdict. The jury found appellant "not guilty" of the rape and kidnapping charges that pertained to Lindsay Beltz, but "guilty" of the remaining charges including the gross sexual imposition charge concerning Lindsay. Upon accepting the jury's verdict, the court sentenced appellant to an aggregate term of 14 years and 5 months. The court imposed a 9 year term on the rape conviction, a consecutive 4 year term on the kidnapping conviction, and a consecutive 17 month term on one of the gross sexual imposition charges; the court also imposed a concurrent 17 month term on the remaining gross sexual imposition conviction, and a consecutive 14 month term on the unlawful sexual conduct charge. In addition, the court classified the appellant as a sexual predator. Appellant timely filed the instant appeal and the raises the following four assignments of error for our consideration.
 {¶ 17} "I. The jury's verdicts were inconsistent with the evidence presented in court and against the manifest weight and sufficiency of the evidence.
 {¶ 18} "II. The trial court erred by entering a judgment of conviction and sentencing appellant on the kidnapping and unlawful sexual conduct with a minor counts, in addition to the rape count, where those counts constituted allied offenses of similar import which were not committed separately or with separate animus from the rape count.
 {¶ 19} "III. Appellant was denied effective assistance of counsel at the trial level.
 {¶ 20} "IV. The trial court erred by classifying appellant as a sexual predator where clear and convincing evidence did not support that conclusion."
 I. {¶ 21} In his first assignment of error, appellant maintains the verdict was against the sufficiency and manifest weight of the evidence. Appellant further contends that the jury verdicts finding him "guilty" with respect to the rape and kidnapping counts concerning Kayla Beltz but "not guilty" with respect to the rape and kidnapping counts concerning Lindsay Beltz were inconsistent. We disagree.
 {¶ 22} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 23} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 24} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 25} The Ohio Supreme Court has held that an inconsistency in a verdict cannot arise out of inconsistent responses to different counts.State v. Brown (1984), 12 Ohio St.3d 147, 465 N.E.2d 889, syllabus;Griffin v. State (1868), 18 Ohio St. 438, 444-445. The court has held that an inconsistency can only arise when the jury gives inconsistent responses to the same count. Brown, 12 Ohio St.3d at syllabus. The court explained that each count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another count.
 {¶ 26} Accordingly, in the case at bar, there is no inconsistency in the jury's verdicts. The charges concerning Kayla Beltz are independent of and unaffected by the jury's finding with respect to the charges concerning Lindsay Beltz. That leaves for our consideration, appellant's claims that the verdicts pertaining to the offenses of rape, kidnapping and gross sexual imposition are against the sufficiency and weight of the evidence.
 {¶ 27} To find appellant guilty of rape, as charged in appellant's case, the jury would have to find that appellant engaged in sexual conduct with another by purposely compelling that other person by force or threat of force. R.C. 2907.02(A) (2). "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 28} In the case at bar, Kayla testified that appellant produced a knife and ordered her and her cousin to disrobe. (1T at 177-78). He then forced the two girls to perform cunnilingus upon each other. (Id. at 178-79). Appellant then forced Kayla to perform fellatio upon him. (Id.). Finally, appellant had vaginal sex with Kayla. (Id. at180-81).
 {¶ 29} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of rape.
 {¶ 30} We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 31} Although appellant presented his statement to the police and cross examined Kayla regarding inconsistencies in the statement given by her to the police to contradict the State's inference that he engaged in sexual conduct with Kayla by purposely compelling her by force or threat of force, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 32} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant engaged in sexual conduct with Kayla by purposely compelling her by force or threat of force. R.C. 2907.02(A) (2). Accordingly, appellant's conviction for rape was not against the manifest weight of the evidence.
 {¶ 33} To find the appellant guilty of kidnapping as charged in appellant's case, the jury would have to find appellant, by force, threat or deception removed Kayla from the place where she was found or restrain the liberty of Kayla in order to engage in sexual activity with her against her will. R.C. 2905.01(A) (4). "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 34} In the case at bar, the State presented evidence that appellant lured Kayla and her cousin to a secluded location on the premise that he was going to obtain marijuana for them. (1T. at 173). While parked at that location, Kayla attempted to toss a cigarette out by opening the car door. (Id. at 175). Appellant told her to "shut the F-ing door." (Id. at 176). Appellant then produced a knife. (Id.). When her cousin attempted to start the car to flee the situation, appellant "put the knife on her". (Id.).
 {¶ 35} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of kidnapping.
 {¶ 36} We hold, therefore, that the state met its burden of production regarding each element of the crime of kidnapping and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 37} Although appellant presented his statement to the police and cross examined Kayla regarding inconsistencies in the statement given by her to the police to contradict the State's inference that he, by force, threat or deception removed Kayla from the place where she was found or restrain the liberty of Kayla in order to engage in sexual activity with her against her will, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 38} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant by force, threat or deception removed Kayla from the place where she was found or restrain the liberty of Kayla in order to engage in sexual activity with her against her will. R.C. 2905.01(A) (4). Accordingly, appellant's conviction for kidnapping was not against the manifest weight of the evidence.
 {¶ 39} Finally, to find appellant guilty of gross sexual imposition, the jury would have to find appellant had sexual contact with Kayla and Lindsay, not the spouse of the appellant; or caused Kayla and Lindsay, not the spouse of the offender, to have sexual contact with the appellant; or cause Kayla and Lindsay to have sexual contact when the appellant purposely compels Kayla and Lindsay, or one of them to submit by force or threat of force. R.C. 2907.05(A) (1).
 {¶ 40} As previously set forth, appellant forced the girls to perform cunniilingus upon each other. (Id. at 103; 178-79). In his statement to the police appellant does not deny having sexual contact with the girls. (State's Exhibit 6).
 {¶ 41} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant had committed the crime of Gross Sexual Imposition.
 {¶ 42} We hold, therefore, that the State met its burden of production regarding each element of the crimes of gross sexual imposition and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 43} Although appellant presented his statement to the police and cross examined Kayla and Lindsay regarding their inconsistencies in the statements given by each to the police to contradict the State's inference that he had sexual contact with Kayla and Lindsay, or caused Kayla and Lindsay, to have sexual contact with the appellant; or caused Kayla and Lindsay to have sexual contact by purposely compelling Kayla and Lindsay, or one of them to submit by force or threat of force, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 44} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had sexual contact with Kayla and Lindsay, not the spouse of the appellant; or caused Kayla and Lindsay, not the spouse of the offender, to have sexual contact with the appellant; or caused Kayla and Lindsay to have sexual contact when the appellant purposely compelled Kayla and Lindsay, or one of them to submit by force or threat of force. R.C. 2907.05(A) (1). Accordingly, appellant's convictions for gross sexual imposition are not against the manifest weight of the evidence.
 {¶ 45} Appellant's first assignment of error is overruled.
 II. {¶ 46} In his second assignment of error, appellant maintains that the trial court erred by not merging the rape and kidnapping counts for sentencing purposes. We disagree.
 {¶ 47} We had remanded this case for the parties to brief the issue of whether the judge or the jury is the proper entity to decide whether the crimes were committed separately or with a separate animus. We determined that, before this court makes a final ruling, we ordered the parties to brief the issue of the applicability of the Blakely v. Washington (June 24, 2004), 124 S.Ct. 2531, 159 L.Ed.2d 403; 72 U.S.L.W. 4546. decision to R.C. 2941.25(A).
 {¶ 48} On December 1, 2004, the Ohio Supreme Court issued its decision in State ex rel. Mason v. Griffin (2004), 104 Ohio St.3d 279,2004-Ohio-6384. In Griffin the defendant was convicted of multiple counts of trafficking in drugs, some of which contained major drug offender specifications subsequent to the decision in Blakely. Id. at ¶ 3. The trial judge sua sponte declared that the defendant was entitled to a jury trial on the sentencing if the State intended to seek more than the statutory maximum for the major-drug-offender specification. Id. at ¶ 4. The State indicated that it was seeking more than the statutory maximum for the conviction. Accordingly the trial judge scheduled a jury trial for sentencing. Id. The State then sought a writ of prohibition to prevent the judge from conducting a jury trial in which the jury would find the facts necessary to support a sentence beyond the statutory maximum. Id. at ¶ 6. In granting and unambiguously lack jurisdiction to hold a jury sentencing hearing . . ." Id. at ¶ 14. The Court noted that the judge had two choices:"(1) apply the statutes as if Blakely did not render them unconstitutional and conduct a sentencing hearing without a jury or (2) find the statutes unconstitutional under Blakely and refuse to impose those enhancement provisions he deemed unconstitutional." Id. at ¶ 17. The Court held "[n]either the Ohio Constitution nor any statute authorizes Judge Griffin to conduct a jury sentencing hearing. The Ohio Constitution does not confer jurisdiction on courts of common pleas; the Constitution instead provides that jurisdiction must be conferred on these courts by the General Assembly." Id at. ¶ 15. The Court further found that the statutes at issue in the criminal case vest exclusive responsibility to make the sentencing determinations in the court and not in a jury. Id. at 16. The Court refused to decide the constitutional issue posed by Blakely. Id. at ¶ 20.
 {¶ 49} In the case at bar, appellant did not argue that the sentencing statute, R.C. 2941.25(A), was unconstitutional. Nor did he make any objection to the judge, rather than a jury making the finding as to separate animus. Based upon the reasoning in Griffin, supra, the trial court was without jurisdiction to conduct a jury trial on the issue of separate animus. As the issue was not raised in the trial court, we to decliner to address the constitutional issue posed by Blakely in this case.
 {¶ 50} R.C 2941.25, Multiple counts states:
 {¶ 51} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 52} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 53} State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, provides:
 {¶ 54} "A rape conviction, pursuant to R.C. 2907.02(A)(1), and a kidnapping conviction, pursuant to R.C. 2905.01(A)(4), are allied offenses of similar import within the meaning of R.C. 2941.25(A), and cannot be punished multiply when they are neither committed separately nor with a separate animus as to each within the meaning of R.C.2941.25(B). (State v. Donald, 57 Ohio St.2d 73, 386 N.E.2d 1341, andState v. Logan, 60 Ohio St.2d 126, 397 N.E.2d 1345, approved and followed.)" (Emphasis added.)
 {¶ 55} In State v. Brown(1984), 12 Ohio St.3d 147, 456 N.E.2d 889, the Ohio Supreme Court set forth the following test to determine whether kidnapping and rape are subject to merger: "[i]n State v. Donald (1979),57 Ohio St.2d 73, 386 N.E.2d 1341 [11 O.O.3d 242], this court ruled that rape and kidnapping were offenses of similar import for purposes of application of R.C. 2941.25(A). In State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345 [14 O.O.3d 373], we outlined under what circumstances convictions for both kidnapping and another offense of the same or similar kind would be allowed to stand. The syllabus in Logan, supra,
states in part:
 {¶ 56} "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 {¶ 57} `(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions; * * *.'
 {¶ 58} Thus, the general rule is that where the kidnapping offense and underlying similar offense are committed separately and with a separate, different animus, convictions for both offenses will be sustained. See, also, State v. Price (1979), 60 Ohio St.2d 136, 398 N.E.2d 772 [ 14 O.O.3d 379], paragraph five of the syllabus." Id. at 150-51, 456 N.E. 2d 892-93.
 {¶ 59} In State v. Logan, supra, the Ohio Supreme Court noted "[l]ike all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. See, generally, State v.Robinson (1975), 48 Ohio App.2d 197, 205, 356 N.E.2d 725, affirmed (1976) 47 Ohio St.2d 103, 114, 351 N.E.2d 88; State v. Gantt (1975),26 N.C.App. 554, 557, 217 S.E.2d 3, 5; and State v. Evans (1976),219 Kan. 515, 519-20, 548 P.2d 772, 777." 60 Ohio St.2d at 131,397 N.E.2d at 1349.
 {¶ 60} In the case at bar, the appellant lured the victims to a secluded location under the guise that they would meet a drug supplier friend of appellant. He forced the victims to kiss and then ordered them to disrobe, believing they were narcs. In the case at bar, the evidence supports a finding that the restraint was prolonged, the confinement was secretive, and the movement was substantial so as to demonstrate significance independent of the other offense, i.e. rape. Accordingly the trial court did not violate R.C. 2941.25 by imposing sentences for the rape and kidnapping convictions consecutively.
 {¶ 61} Appellant's second assignment of error is overruled.
 III. {¶ 62} In his third assignment of error appellant maintains that he was denied effective assistance of trial counsel. Specifically, appellant argues that due to the break down in his relationship with counsel he failed to understand and take advantage of a potential plea bargain in his case. We disagree.
 {¶ 63} A claim of ineffective assistance of counsel requires a two-prong analysis.
 {¶ 64} The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 65} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 66} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 67} In order to warrant a reversal, the appellant must show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley,
supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 68} In the case at bar, the trial judge spent nearly thirty (30) minutes explaining the plea offer and answering appellant's questions. (T., Nov. 17, 2003 at 18; 41). Appellant indicated that he understood: "[y]ou said [sic] understanding was 6 years, 2 years served in the penitentiary, judicial release." (Id. at 29). The court cautioned appellant that any consideration of judicial release would require that appellant not receive a negative report from the prison. (Id. at 22; 30; 35). The court, also in response to appellant's inquires, indicated that the sentence would be five (5) years, and appellant would be given credit for the six (6) months served in the Stark County Jail toward the time he could file for judicial release:
 {¶ 69} ". . the sentence would be five years, 5 year sentence. You would be down in prison for at least 18 months before you could file for probation, judicial release. Do you understand that? [Defendant Payton]: Yes, sir." (Id. at 32-33).
 {¶ 70} The real concern for appellant was that he would have time hanging over his head when he came out of prison on judicial release. (Id. at 36-39). The appellant stated: "I don't want to take the gamble. The significance of the case is, the case was — you know, the case I was accused of doing involved a lot of drugs and alcohol; and in prison drugs and alcohol are down there.
 {¶ 71} "I don't want to take the chance of taking 6 years and I can go to trial and feel that I am not guilty of the things that I am accused of. That's the only thing I was arguing with him about doing . . . Right. You made it very clear to me, sir. That's why I told him I didn't want to take the risk or gamble to have me go 5 years." (Id. at 36-38).
 {¶ 72} It is clear from the transcript that the trial court thoroughly explained the plea offer to appellant. Having reviewed the transcript we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor was the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 73} Appellant's third assignment of error is overruled.
 IV. {¶ 74} In the fourth assignment of error, appellant asserts that the trial court's determination that he be classified as a sexual predator was not supported by clear and convincing evidence. We disagree.
 {¶ 75} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 76} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B) (3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 77} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 78} "(a) The offender's or delinquent child's age;
 {¶ 79} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 80} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 81} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 82} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 83} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 84} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 85} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 86} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 87} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 88} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C) (2) (b). Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998), 126 Ohio App.3d 485, 487.
 {¶ 89} The trial court noted that one of the victims was fifteen years old and the other was seventeen years old. (Sent. T., Dec. 12, 2003 at 555). R.C. 2950.09(B) (3) (c). The offense involved multiple victims. (Id). R.C. 2950.09(B) (3) (d). The Court considered appellant's prior criminal and juvenile record. (Id at 538-39; 555-556). R.C. 2950.09(B) (3) (f). The court found that the actions displayed cruelty. (Id.). R.C.2950.09(B) (3) (i).
 {¶ 90} We find clear and convincing evidence in the record to support the trial court's classification of Appellant as a sexual predator. Statev. Nyel, 1st Dist. No. C-020640, 2003-Ohio-4961.
 {¶ 91} Appellant's fourth assignment of error is overruled.
 {¶ 92} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Gwin, P.J., Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.