**In re D.M.**

[Cite as *In re D.M.*, 158 Ohio App.3d 780, 2004-Ohio-5858.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83646.

Decided Nov. 4, 2004.

782

David Bodiker, State Public Defender, and Amanda J. Powell, Assistant State Public Defender, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Gayl Berger, Assistant Prosecuting Attorney, for appellee.

---

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} D.M., a minor, appeals the juvenile court's decision finding him delinquent for the offense of gross sexual imposition, a felony of the third degree if committed by an adult. D.M. assigns five errors for our review.[1]

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

{¶ 3} On June 27, 2003, a complaint for one count of rape was filed against D.M. for sexually abusing his three-year-old cousin.

---

1. See appendix.

{¶ 4} At the adjudicatory hearing, the mother of the victim testified that her 14–year–old nephew, D.M., was babysitting her three-year-old son and nine-year-old daughter. The next morning, the three-year-old told her, "Mom, Little D licked my weenie." The mother testified that D.M. often babysat her son while she worked. When she arrived home on the day of the incident, D.M. was there, but her children went to a movie with their grandmother. When the children returned, D.M. was still there. D.M. did not go home until about 10:00 p.m. or 11:00 p.m.

{¶ 5} The next morning, the mother called D.M. around 8:00 a.m. to ask him to bring some milk over for cereal. Her son was not awake at the time. D.M. brought the milk over about five minutes later and left. At that time the victim was awake. Around 10:00 a.m., the mother and her daughter were watching cartoons. Her son was playing with his trucks when he said, "[D.M.] licked my weenie." The mother asked him to repeat his statement and he said again, "[D.M.] licked my weenie." The mother immediately called D.M.'s father, who advised her to call the police. When she asked D.M. about the allegation, he laughed and denied it.

{¶ 6} After the allegation, D.M.'s father testified that he sent his son to live with his mother because he did not want him around the young children living in his home. Even before the allegations, D.M.'s father stated that his girlfriend's three-year-old son was afraid to sleep in the same room with D.M. although he never knew the reason. According to the father, D.M. has behavioral problems, and although in the police report the father stated that he believed his son did the act, he testified at the hearing that he did not know whether his son did it or not. He stated that D.M. told him he only blew on the child's belly button.

{¶ 7} D.M.'s mother testified that D.M. lived with her until he was nine years old, when she sent him to live with his father because her two younger children had claimed that he had fondled them. The mother stated that D.M. is welcome to live with her as long as he is supervised around her young children.

{¶ 8} Based on the above evidence, the court adjudicated D.M. delinquent for the lesser included offense of gross sexual imposition. He was committed to the Department of Youth Services for a minimum period of six months and a maximum period not to exceed D.M.'s attaining the age of 21.

{¶ 9} In his first assigned error, D.M. argues that his right to confront witnesses was violated when the trial court allowed the victim's mother to testify regarding her son's statement implicating D.M. The trial court admitted the statement as an excited-utterance exception. D.M. argues that the statement

was not an excited utterance because the state failed to prove that the victim was in an agitated state.

{¶ 10} Evid.R. 803(2) provides that the following statement will not be excluded as hearsay, even though the declarant is available as a witness:

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

{¶ 11} The admission of a statement as an excited utterance under Evid.R. 803(2) is generally within the sound discretion of the trial court.[2] An appellate court will not reverse the trial court's decision absent an abuse of discretion.[3] For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) the event must be startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while the declarant was still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event.[4]

{¶ 12} The only prerequisite that is in dispute is whether the victim made the statement while still under the stress of excitement caused by the event. The evidence is undisputed that the child made the statement while calmly playing with his trucks.

{¶ 13} The excited-utterance hearsay exception is treated differently when the declarant is an alleged sexually abused child; the test is extremely liberal.[5] The scrutiny for the child declarant is less than that for an adult. The liberal scrutiny is based on the court's recognition that young children are more trustworthy because of their limited reflective powers.[6] With this in mind, cases involving very young children focus on the spontaneity of the statement, not the progression of a startling event or occurrence.

2. *State v. Duncan* (1978), 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 373 N.E.2d 1234; *State v. Smith* (1986), 34 Ohio App.3d 180, 190–191, 517 N.E.2d 933.

3. See *State v. Brown* (1996), 112 Ohio App.3d 583, 601, 679 N.E.2d 361; *State v. Fowler* (1985), 27 Ohio App.3d 149, 152, 27 OBR 182, 500 N.E.2d 390.

4. *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316; *Duncan,* supra, paragraph one of the syllabus.

5. *State v. Shoop* (1993), 87 Ohio App.3d 462, 472, 622 N.E.2d 665. See, also, *Taylor,* supra, 66 Ohio St.3d at 304, 612 N.E.2d 316.

6. *Taylor,* supra, 66 Ohio St.3d at 304, 612 N.E.2d 316; *State v. Wagner* (1986), 30 Ohio App.3d 261, 264, 30 OBR 458, 508 N.E.2d 164.

{¶ 14} This court in *State v. Wagner*[7] found a three-year-old victim's statement to be an excited utterance, although it was made calmly the day after the occurrence and while his mother bathed him.

{¶ 15} We explained:

The significance of trustworthiness of an excited utterance lies in the fact the words are uttered "while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." 6 Wigmore on Evidence (Chadbourn Rev.1976) 202–203, Section 1750. The limited reflective powers of a three-year-old, coupled with his inability to understand the enormity or ramifications of the attack upon him, sustain the trustworthiness of his communications. As a three-year-old, truly in the age of innocence, he lacked the motive or reflective capacities to prevaricate [about] the circumstances of the attack. Furthermore, the immediacy of each communication, considered in light of the available opportunities to express himself, satisfies the requirement of spontaneity.[8]

{¶ 16} In another case from this court, *State v. Duke*,[9] we found that the spontaneous statement of a three-year-old child, ten days after the incident, constituted an excited utterance. While the child was being bathed, the child stated, "My daddy sucks my body." This court, relying on *Wagner*, found that the child's spontaneous statement regarding a subject matter ordinarily foreign to a three-year-old child constituted an excited utterance.

{¶ 17} Likewise, in the instant case, the victim was three years old, he was calm in telling his mother what happened, his statement was spontaneous, and his mother had not prompted him by asking questions. Additionally, the statement concerned a subject ordinarily foreign to a three-year-old child.

{¶ 18} We understand that each excited utterance must be reviewed on a case-by-case basis. We conclude, based on the circumstances of this case, that because the victim was of such a young age, and the statement was spontaneous and did not indicate a reflective process, the statement constituted an excited utterance. Accordingly, D.M.'s first assigned error is overruled.

{¶ 19} In his second assigned error, D.M. argues that the trial court erred by failing to conduct a pretrial hearing pursuant to Evid.R. 807 to determine the availability or competency of the alleged victim prior to admitting the victim's statement.

---

7. (1986), 30 Ohio App.3d 261, 30 OBR 458, 508 N.E.2d 164.

8. Id. at 264, 30 OBR 458, 508 N.E.2d 164.

9. (Aug. 25, 1988), Cuyahoga App. No. 52604, 1988 WL 88862.

{¶ 20} The statement was admitted pursuant to the excited-utterance exception to the hearsay rule, not Evid.R. 807. A prior finding of availability or competency is not necessary when the victim's statement is an excited utterance.[10] The Ohio Supreme Court in *State v. Wallace*[11] addressed the issue of competency and the excited-utterance exception and held as follows:

[I]t has long been the common law of Ohio that the testimonial incompetency of a child-declarant does not bar the admission of the child's declarations as excited utterances. The overwhelming majority of jurisdictions which have considered this issue are in accord. * * *

* * *

* * *[C]ompetency is, in large part, inherently satisfied by the elements required to establish an excited utterance. * * * To be competent, a witness must appreciate the duty to tell the truth and possess the ability to recall accurately. These requirements are not relevant to the admissibility of an excited utterance because an excited utterance is made while the declarant is dominated by the excitement of the event and before there is opportunity to reflect and fabricate statements relating to the event.

(Footnote and citations omitted.)

{¶ 21} Because the statement was admitted as an excited utterance, a hearing was not required. Accordingly, D.M.'s second assigned error is overruled.

{¶ 22} In his third assigned error, D.M. argues that the trial court's decision finding him delinquent for gross sexual imposition was not supported by sufficient evidence, because the only evidence in support of the charge was the inadmissible statement made by the victim.

{¶ 23} The standard of review with regard to the sufficiency of evidence is set forth in *State v. Bridgeman*:[12] "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[13]

---

**10.** *State v. Said* (1994), 71 Ohio St.3d 473, 644 N.E.2d 337; *State v. Boston* (1989), 46 Ohio St.3d 108, 114, 545 N.E.2d 1220; *State v. Street* (1997), 122 Ohio App.3d 79, 85, 701 N.E.2d 50; *State v. Burnette* (1998), 125 Ohio App.3d 278, 281, 708 N.E.2d 276; *State v. Wright* (Oct. 2, 1997), Cuyahoga App. No. 71008, 1997 WL 607537.

**11.** (1988), 37 Ohio St.3d 87, 93–94, 524 N.E.2d 466.

**12.** (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

**13.** See, also, *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394; *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.

{¶ 24} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*,[14] in which the Ohio Supreme Court held:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

{¶ 25} R.C. 2907.05 defines gross sexual imposition as follows:

(A) No person shall have sexual contact with another, not the spouse of the offender[,] * * * when any of the following applies:

    * * *

(4) The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 26} The statement by the three-year-old victim that "Little D licked my weenie" supplied sufficient evidence to support a conviction for gross sexual imposition. Accordingly, D.M.'s third assigned error is overruled.

{¶ 27} In his fourth assigned error, D.M. argues that the trial court's decision finding him delinquent for gross sexual imposition is against the manifest weight of the evidence because there is no evidence to corroborate the victim's statement that D.M. committed the sexual abuse.

{¶ 28} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact-finder's verdict. As the Ohio Supreme Court held in *State v. Thompkins*:[15]

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of

---

14. (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

15. (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's [Law Dictionary (6 Ed.1990) ] at 1594.

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

Quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 29} Although the victim's excited utterance is the only evidence of the abuse, the father stated in the police report that he believed that D.M. had committed the act. At trial, D.M.'s father stated that D.M.'s prior history and behavior problems led him to believe that D.M. committed the abuse. D.M. is not permitted to live at his father's home because of young children being there. The mother also testified that her young children had complained that D.M. had fondled them. Consequently, the trial court's decision is not against the manifest weight of the evidence. Accordingly, D.M.'s fourth assigned error is overruled.

{¶ 30} In his fifth assigned error, D.M. argues that the trial court erred by failing to appoint a guardian ad litem to represent him. According to D.M., a conflict existed between him and his parents because they refused to allow him to live with them.

{¶ 31} Both R.C. 2151.281(A) and Juv.R. 4(B) mandate that a juvenile court appoint a guardian ad litem in certain circumstances. R.C. 2151.281(A) provides:

The court shall appoint a guardian [ad litem] to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

* * * .

(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

{¶ 32} Juv.R. 4(B) provides:

The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

* * *

(2) The interests of the child and the interests of the parent may conflict.

{¶ 33} Because these provisions are mandatory, the failure of a court to appoint a guardian ad litem under these provisions constitutes reversible

error.[16] "The juvenile court is in the best position to weigh the relevant facts in determining whether a potential conflict of interest exists between the parent and child." [17] Therefore, an abuse of discretion standard applies to the trial court's decision.[18]

{¶ 34} Thus, in resolving D.M.'s assigned error, we must determine whether a conflict of interest existed between D.M. and his parents that warranted the appointment of a guardian ad litem. Such conflicts are more apparent in dependency, neglect, and abuse proceedings than in delinquency cases.[19]

{¶ 35} D.M. cites a case from the second district, *In re K.J.F.*,[20] to support his contention a conflict existed. However, the instant case is distinguishable. In *K.J.F.*, not only did the parents not want the juvenile to live with them, but they were also the parents of the victim. The mother also wrote a letter to the court establishing the conflict. She said she could not make decisions in her son's best interest. Finally, the juvenile in *K.J.F.* appeared without counsel and entered an admission to being a parole violator, when it was debatable whether his conduct violated parole. In the instant case, D.M.'s parents could protect his interest and had not suggested that they could not. Additionally, none of the other factors in *K.J.F.* are present in this case.

{¶ 36} At trial, D.M.'s mother stated that D.M. was welcome to live with her, although he would have to be supervised around his younger siblings. At the disposition hearing, she stated that she did not feel prison would help D.M., but that he needed counseling.

{¶ 37} Finally, in this case, the public defender zealously protected D.M.'s rights. The court in *Sappington* noted, "In evaluating the need for a guardian ad litem, courts have also considered whether the minor was represented by counsel. See [*In re*] *Johnson* [1965], 106 Ohio App.3d [38] at 43, 665 N.E.2d [247] at 249–250; [*In re*] *Nation* [1989], 61 Ohio App.3d [763] at 767, 573 N.E.2d [1155] at 1158, fn. 2. A juvenile court should be more sensitive to potential conflicts of interest under Juv.R. 4(B)(2) when there is no other person present to protect the rights and interests of the minor." [21]

---

16. See *In re Sappington* (1997), 123 Ohio App.3d 448, 704 N.E.2d 339; *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 92, 601 N.E.2d 92.

17. *In re Sappington* at 453–454, 704 N.E.2d 339.

18. Id.

19. *In re Maurice Howard* (1997), 119 Ohio App.3d 201, 206, 695 N.E.2d 1.

20. 2nd Dist. No. 2003 CA 41, 2004-Ohio-263, 2004 WL 102847.

21. Id., 123 Ohio App.3d at 455, 704 N.E.2d 339.

{¶ 38} Equally, we are unpersuaded by the arguments regarding the polygraph test. The evidence indicates D.M. refused to take the test. We have no other evidence regarding this matter and see no need to speculate about its value. Accordingly, D.M.'s fifth assigned error is overruled.

Judgment affirmed.

ANNE L. KILBANE and COLLEEN CONWAY COONEY, JJ., concur.

## APPENDIX

### Assignments of Error

{¶ 39} I. The trial court violated [D.M.'s] right of confrontation by admitting hearsay evidence in violation of Ohio Rule of Evidence 803(2), the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶ 40} II. The trial court violated [D.M.'s] right of confrontation by failing to conduct a hearing to determine the applicability of Evidence Rule 807 in violation of the Sixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

{¶ 41} III. The trial court violated [D.M.'s] right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Section 16, Article I of the Ohio Constitution, and Juv.R. 29(E)(4) when it adjudicated him delinquent of gross sexual imposition absent proof of every element of the charge against him by sufficient, competent, and credible evidence.

{¶ 42} IV. The trial court violated [D.M's] right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution when it adjudicated him delinquent of gross sexual imposition, when that finding was against the manifest weight of the evidence.

{¶ 43} V. The trial court committed reversible error when it failed to appoint a guardian ad litem for [D.M.] in violation of Ohio Revised Code Section 2151.281(A) and Juvenile Rule 4(B).