OPINION
{¶ 1} Defendant-appellant Brian D. Henley appeals from his conviction and sentence for Rape, Kidnapping, Felonious Assault and Attempted Felonious Assault. Henley contends that the trial court erred with regard to evidentiary issues as well as in sentencing. He also contends that the convictions are not supported by the evidence. Finally, he contends that the trial court erred by designating him a sexual predator.
 {¶ 2} From our review of the record, we find sufficient, credible evidence to support the convictions. We conclude that the trial court did not err with regard to the admission of evidence or the imposition of sentence. Finally, we find no error in the trial court's decision to designate Henley a sexual predator. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In June of 2004, Henley was indicted on one count of Kidnaping, four counts of Rape, two counts of Felonious Assault and one count of Attempted Felonious Assault. The case proceeded to jury trial.
 {¶ 4} At trial, the State presented the testimony of the victim who testified that she had been at work at Chicken Louie's restaurant on Sunday, May 23, 2004. The victim was working the night shift. She testified that Henley came into the restaurant at approximately 2:00 a.m. on May 24. The victim was acquainted with Henley, whom she had met at Sinclair College. She testified that she had not seen him for about six months. She stated that Henley waved at her, indicated that he wanted her telephone number — which she did not give — purchased food and left.
 {¶ 5} The victim testified that after her shift ended, she went to her bus stop, where she encountered Henley. She testified that Henley offered her a ride home and that she initially refused the offer. However, the victim testified that she subsequently accepted the offer of a ride. During the approximately ten-minute ride, Henley and the victim engaged in conversation about the victim's intention to move to Florida. The victim testified that upon reaching her apartment complex, Henley asked to enter her apartment to use her restroom. The victim stated that she agreed after Henley kept insisting he had to use the restroom. After entering the apartment, Henley went to the restroom, while the victim checked her voice mail. She testified that Henley claimed there was no toilet tissue in the restroom and so she went to the linen closet to retrieve some tissue. The victim testified that she bent down into the closet to retrieve the tissue, and that when she stood up, Henley was standing behind her.
 {¶ 6} According to the victim, Henley had a knife and duct tape. The victim testified that Henley ordered her into her guest bedroom, where he told her to take off her clothes. She stated that she stripped down to her bra when Henley placed duct tape on her mouth and around her hands. She testified that Henley then tried to remove her bra, but could not because of the duct tape around her hands. She testified that Henley cut the bra to remove it.
 {¶ 7} The victim testified that Henley proceeded to rape her both vaginally and anally. She testified that he also performed oral sex on her. She testified that these events took place on the bed and on the floor. The victim testified that Henley repeatedly threatened to kill her and that he repeatedly pressed the knife against her. She testified that while Henley was raping her, she accidentally urinated. The victim testified that Henley became angry and placed a pillow over her face with so much pressure that she could not breathe. The victim began to struggle with Henley and was able to free her hands. She tried to escape from the room, but Henley stopped her. The victim testified that she broke the bedroom window and was screaming for help, when Henley began to choke her. The victim indicated that she grabbed Henley in his genital area and he released her throat and began stabbing her. The victim testified that during the struggle she was able to grab the knife. The struggle was so violent that the closet doors were knocked down. At some point, Henley grabbed his clothes and fled.
 {¶ 8} According to the transcript, the victim then ran, nude, from her apartment. She was observed by a neighbor who was in the parking lot preparing to leave for work. The neighbor, Curt Chancellor, testified that he saw the victim running out of the building without any clothes on and heard her screaming that she had been raped. Chancellor testified that he also observed a man who had run from the building before the victim. He testified that the man got into a light blue car and "shot out" of the parking lot. Chancellor was unable to get the license plate number, because the car left the area so quickly. Chancellor stated that the victim ran toward an RTA bus while continuing to scream that she had been raped and that the perpetrator had tried to kill her. He testified that the victim appeared to have stab wounds, and that she was crying.
 {¶ 9} The State also presented the testimony of Ron Chambers. Chambers is an RTA bus driver. During one of his bus runs, he was stopped near the victim's apartment complex. Chambers testified that he heard screams and then observed a woman running toward the bus. He testified that the woman was naked and bleeding. He further testified that he heard her yell that she had been raped and stabbed. Chambers also stated that he observed a light blue car speed out of the complex parking lot. Chambers testified that he called 911 and his supervisor.
 {¶ 10} Dayton Police Officer Rod Roberts testified that he was dispatched to the scene, where he found a female wearing only a jacket over her shoulders. He testified that she was covered with blood and that she was hysterical and crying. Another police officer, Ed Zawodniak, testified that when he arrived upon the scene he noted that the apartment showed signs of a violent struggle. He testified that he observed a broken window and a bra that had been cut. He also testified that he observed some torn, bloody duct tape. He testified that he took pictures of the victim, which depicted her stab wounds. He testified that she also had some duct tape on the back of her neck, and signs on her neck that indicated that it had been duct taped.
 {¶ 11} The State also presented the testimony of the emergency room doctor who initially examined the victim. The doctor testified that the victim was sobbing, shaking and "extremely upset." The doctor testified that the victim stated that she had been raped and stabbed.
 {¶ 12} Finally, the State presented the testimony of Joy Negron, a Buffalo New York policewoman. Negron testified that she was aware that the City of Dayton was looking for Henley. She testified that while on routine patrol on May 28, 2004, she observed and arrested Henley.
 {¶ 13} Henley also testified at trial. He claimed that he and the victim had known each other and been in contact prior to the alleged rape. He testified that on May 23, 2004, he had been at his girlfriend's apartment. He testified that he left to get something to eat, and that he went to Chicken Louie's restaurant where he encountered the victim. He testified that while there, he and the victim "made a few gestures to each other which indicated that [they] were going to contact each other and that he was going to pick her up after she got off work at 5:00 a.m."
 {¶ 14} Henley testified that at approximately 5:00 a.m. he was driving a dark gray vehicle when he picked up the victim. He testified that he drove her to her apartment and that they decided to engage in sex. He testified that they went to the upstairs bedroom of the victim's apartment where they proceeded to undress. According to Henley, he and the victim engaged in consensual oral, vaginal and anal sex.
 {¶ 15} At the conclusion of the sexual encounter, Henley began to get dressed. Henley testified that as he was getting dressed, a man came into the room with a knife and a ball cap. Henley testified that the man attempted to rob him, but that Henley began fighting. Henley testified that the victim helped the man during the altercation. Henley further testified that he was able to gain control of the knife at which point the man fled. Henley testified that the victim continued to attack him and that they fell into a window which broke. Henley testified that he and the victim then fell down and that he put his hands around her throat and demanded to know who had just attempted to rob him. Henley testified that he then left the apartment.
 {¶ 16} Henley also presented the testimony of his girlfriend, Barbara Pettiford. Henley arrived at Pettiford's residence after leaving the victim's apartment. Pettiford testified that Henley appeared nervous, scared and shaken. She testified that he made statements to her about being "jumped" and hit, and that he kept saying, "[i]t was either me or them." Pettiford also testified that Henley "grabbed his bags and stuff and he said he had to get out of town because they might have followed him." Pettiford further stated that Henley told her to get her children and go stay with her mother, who resided in another town.
 {¶ 17} The record indicates that later that same evening, Henley traveled to Buffalo, New York. Following his arrest there, he was indicted and tried in Montgomery County.
 {¶ 18} The jury convicted Henley on all charges. Henley was sentenced to a prison term of twenty-two years. He was sentenced to the maximum term, ten years, for the Rape convictions. Additionally, some of the sentences were ordered to run consecutively. Henley was also designated a Sexual Predator. From his conviction and sentence, Henley appeals.
 II {¶ 19} Henley's First Assignment of Error states as follows:
 {¶ 20} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND VIOLATED THE CONSTITUTIONAL RIGHTS OF APPELLANT BY RESTRICTING THE TESTIMONY OF A DEFENSE WITNESS."
 {¶ 21} Henley contends that the trial court abused its discretion by limiting Pettiford's testimony. Specifically, Henley claims that after he made the initial statements to Pettiford at her apartment, he and Pettiford drove in separate cars to the Dayton Mall. Once there, Pettiford and Henley continued their conversation. According to Pettiford, Henley continued to appear upset. Pettiford also indicated that Henley informed her that he had engaged in sex with another woman and was subsequently robbed and attacked by the woman and an accomplice. Henley contends that the statements made at the Mall were excited utterances, and therefore admissible.
 {¶ 22} We review a trial court's decision whether a declaration is admissible as an excited utterance for abuse of discretion. In re D.M.,158 Ohio App. 3d 780, 2004-Ohio-5858, ¶ 11, citations omitted. The phrase "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, citations omitted.
 {¶ 23} Evid.R. 803(2) allows the admission of hearsay under the "excited utterance" exception, which is defined as, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." For a statement to be admissible as an excited utterance, (1) there must have been an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must have related to the startling event; and (4) the declarant must have personally observed the startling event. In re D.M., supra.
 {¶ 24} The trial court permitted Pettiford to testify regarding Henley's statements made at her apartment, finding that the statements were made while under the stress of the event. Specifically, the trial court focused on its finding that, according to Pettiford, Henley was "rushing about as he's in the apartment so he's not in a reflective mood in this period of time. He's rushing about * * * mumbling something not in response to any questions by [Pettiford] but he's mumbling something, he's moving about, really fast into her bedroom snatching his bag, putting clothes into his bag * * *."
 {¶ 25} However, the trial court did not permit the statements made at the Dayton Mall to be introduced to the jury. The trial court noted the drive to the Mall took fifteen to twenty minutes. The trial court further noted that Henley and Pettiford decided to drive in separate cars; a fact which the trial court stated indicated that Henley was "now beginning to show a more reflective sort of state of mind * * * a more deliberate state of mind * * *." The trial court further noted that Pettiford indicated that although Henley was still upset, the interaction at the Mall was more of a conversation, again indicating that Henley was calming down. Finally, the trial court noted that the conversation at the Mall also turned into a conversation about Henley's "being unfaithful" and his apology to Pettiford for his actions.
 {¶ 26} From our review of the record, we cannot say that the trial court abused its discretion with regard to this testimony. Indeed, we conclude that the trial court's decision was well-reasoned and appropriate. Therefore, the First Assignment of Error is overruled.
 III {¶ 27} Henley's Second Assignment of Error is as follows:
 {¶ 28} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 29} Henley contends that the convictions should be overturned because they are not supported by the evidence. Stated in a nutshell, he argues that the testimony presented by the defense was more credible than that presented by the State.
 {¶ 30} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175, citation omitted.
 {¶ 31} In the present case, the conflicting nature of the trial testimony does not persuade us that Henley's conviction is against the weight of the evidence. As we recently recognized in State v. Palmer,
Montgomery App. No. 20713, 2005-Ohio-4517, ¶ 6, one function of the trier of fact is to resolve conflicting trial testimony. Here the jury resolved those conflicts in favor of the victim, finding her testimony to be the most credible.
 {¶ 32} The victim's testimony was corroborated by substantial physical evidence of her injuries, while Henley's testimony could not easily be reconciled with the physical evidence. As one example, there was duct-tape residue about Henley's neck and face, corroborating her version of events. Henley was forced to argue that the alleged victim had consensual sex with him to set him up to be robbed by a third person who was hiding in her apartment, who left no evidence of his presence behind, then had the presence of mind to duct-tape herself about her face and neck, and then remove the duct tape, so as to leave physical evidence corroborating her version of events. The jury could quite reasonably choose to credit the victim's testimony in preference to Henley's testimony.
 {¶ 33} Based on our review of the trial transcript, we do not conclude that the jury clearly lost its way in crediting the victim's version of events.
 {¶ 34} The Second Assignment of Error is overruled.
 IV {¶ 35} The Third Assignment of Error provides as follows:
 {¶ 36} "THE TRIAL COURT ERRED IN THE IMPOSITION OF SENTENCE ON APPELLANT."
 {¶ 37} Henley contends that the trial court erred in sentencing. Specifically, he claims that the trial court erred by failing to merge offenses, by imposing maximum, consecutive and mandatory sentences, and by failing to comply with Blakely v. Washington (2004), 542 U.S. 296.
 {¶ 38} First, Henley contends that the trial court erred by failing to merge the offenses of Rape and Kidnapping as allied offenses of similar import. Henley concedes that we must review this issue under the plain error standard since he failed to bring the error to the attention of the trial court.
 {¶ 39} In this case, we find that the trial court did err by failing to merge these two offenses. However, we cannot say that this failure rises to the level of plain error. "To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings." State v. Barnes (2002), 94 Ohio St.3d 21, 27. The issue of whether a kidnapping offense merges with a rape offense when the two offenses are committed during the same general course of conduct is inherently fact-sensitive and difficult. The Ohio Supreme Court has adopted the following guidelines:
 {¶ 40} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 {¶ 41} "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."State v. Logan (1979), 60 Ohio St.2d 126, syllabus.
 {¶ 42} The cases cited by the parties in the case before us are a testament to the fineness with which these distinctions are made. The State cites State v. Logan, supra, State v. Collins (4th District), 2002-Ohio-3212, and State v. Payton (5th District), 2005-Ohio-737. In the first two of these cases, the Kidnapping and Rape offenses were merged; in the third, they were not merged. Although the State argues that these cases are readily distinguishable, and that the case before us is more like State v. Payton, supra, where the offenses were not merged, in our view the three cases are difficult, if not impossible, to distinguish on their facts. Taken together, they demonstrate, to our satisfaction, that the trial court's error, in the case before us, in failing to merge the Kidnapping and Rape offenses on the facts before us, was anything but obvious. Fortunately for Henley, the sentences for these two offenses were ordered to be served concurrently, rather than consecutively.
 {¶ 43} Although we conclude that the trial court did err by failing to merge the Kidnapping and Rape offenses, we conclude that this error is not sufficiently obvious to constitute plain error.
 {¶ 44} Next, Henley contends that the trial court committed plain error by failing to merge the offenses of Felonious Assault and Attempted Felonious Assault. We find no support for this argument. Henley's act of attempting to suffocate the victim with a pillow — Attempted Felonious Assault — is distinct and separate from his act of stabbing the victim — Felonious Assault. We conclude that each of these two acts could reasonably be considered as having a separate and distinct animus. Thus, we find no error, and certainly no plain error, in the trial court's failure to merge these counts.
 {¶ 45} Henley also contends that the trial court erred by sentencing him to "mandatory time." In support, Henley argues that the trial court imposed mandatory ten-year sentences for each of the Rape convictions. However, from our review of the record, it appears that the trial court was merely noting that it was required to impose prison terms for the Rape convictions in this case pursuant to R.C. 2929.13(F)(2), which mandates the imposition of prison terms for "any rape, regardless of whether force was involved * * *." Thus, we find no error.
 {¶ 46} Henley next claims that the trial court erred by sentencing him to consecutive sentences and that it failed to make findings supporting such sentences.
 {¶ 47} Pursuant to R.C. 2929.14(E)(4), consecutive sentences may be imposed if the trial court finds that the consecutive service "is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds * * * [that] at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."
 {¶ 48} The trial court specifically found that consecutive sentences were necessary in this case in order to punish Henley. The trial court further stated that such sentences were not disproportionate to the seriousness of Henley's conduct. Finally, the trial court found that at least two of the multiple offenses were committed as part of one course of conduct resulting in harm to the victim that was so great that no single prison term would suffice.
 {¶ 49} In support of these findings, the trial court noted that Henley was "particularly brutal" in the commission of the Felonious Assault and the Rapes. Specifically, the trial court noted that Henley repeatedly threatened to kill the victim and that he actually attempted to suffocate and choke the woman. The trial court noted that Henley inflicted "enormous pain" on the victim. First, Henley's use of the knife resulted in a laceration to the victim's left hand which left the thumb "flapping" and which "almost cut off" the index finger. Second, Henley inflicted one stab wound to the victim's right side which "carried substantial risk of death." Finally, Henley also caused "severe injury to the anus and to the vagina" of the victim. As noted by the trial court, the record showed that the damage to the victim's anus was the result of "a lot of force and repeated force."
 {¶ 50} We conclude that the trial court's findings were sufficient for the imposition of consecutive sentences. We further conclude that the record amply supports these findings. Thus, we find no error in the imposition of consecutive sentences.
 {¶ 51} Henley argues that the trial court erred by imposing the maximum sentence allowed for Rape. He also contends that the trial court failed to make findings to support the imposition of maximum sentences.
 {¶ 52} When imposing the longest prison term authorized for an offense, the trial court must make one of the findings set out in R.C.2929.14(C). Pursuant to that statute, maximum sentences may be imposed upon offenders who commit the worst form of the offense and those offenders who pose the greatest likelihood of committing future crimes.
 {¶ 53} In this case, the trial court found that Henley posed the greatest likelihood of committing future crimes. Specifically, the trial court found that Henley had a prior criminal record. The trial court found that the acts leading to the instant convictions were more serious because of the brutality, the threats to kill, and the serious physical and mental injury to the victim. The trial court noted that Henley's relationship to the victim facilitated the Rapes. The trial court further noted that Henley showed no remorse for his actions. Indeed, the sentencing transcript reveals that Henley continued to deny his culpability to the very end. Thus, in reviewing the recidivism factors set forth in R.C. 292912.(B), the trial court found that it was more likely that Henley would commit further offenses.
 {¶ 54} Again, we find that the record supports this finding, and thus find no error with the imposition of maximum sentences.
 {¶ 55} Finally, Henley contends that the trial court erred by sentencing him in violation of Blakely v. Washington, supra. We need not address this issue since it was not raised at the trial court level. See, State v. Austin, Montgomery App. No. 20445, 2005-Ohio-1035.
 {¶ 56} The Third Assignment of Error is overruled.
 V {¶ 57} The Fourth Assignment of Error states as follows:
 {¶ 58} "THE TRIAL COURT ERRED IN DESIGNATING APPELLANT A SEXUAL PREDATOR."
 {¶ 59} Henley contends that he should not have been designated a sexual predator. In support, he claims that the record does not support a finding that he is likely to commit future sexually oriented offenses.
 {¶ 60} In determining whether a defendant is a sexual predator, a trial court must find by clear and convincing evidence that the offender has been convicted of or pled guilty to a sexually oriented offense and that "he is likely to engage in the future in one or more sexually oriented offenses." State v. Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph 3 of the syllabus.
 {¶ 61} In this case, Henley was convicted of four counts of Rape in violation of R.C. 2907.02(A)(2). There is no issue that these offenses are considered aggravated sexually-oriented offenses. See, R.C. 2950.01(O). Therefore, the only issue before us is whether the trial court erred in determining the likelihood that Henley would commit other sexually-oriented offenses.
 {¶ 62} In making a determination regarding the likelihood of recidivism, the trial court is guided by the factors set forth in R.C.2950.09(B)(3). These factors are:
 {¶ 63} (a) The offender's age;
 {¶ 64} (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 65} (c) The age of the victim;
 {¶ 66} (d) Whether the sexually oriented offense involved multiple victims;
 {¶ 67} (e) Whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting;
 {¶ 68} (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense and whether the offender completed any sentence imposed for the prior offense;
 {¶ 69} (g) Any mental illness or mental disability of the offender;
 {¶ 70} (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 71} (i) Whether the offender, during the commission of the sexually oriented offense displayed cruelty or made one or more threats of cruelty;
 {¶ 72} (j) Any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 73} In this case, Henley refused to undergo a psychiatric evaluation prior to his sexual predator hearing. However, the trial court indicated that it would make no negative inference from this refusal. The trial court then reviewed the facts of this case, as well as the pre-sentence investigation report, in determining that Henley should be designated a sexual predator. The record indicates that the trial court considered the fact that Henley denied any wrongdoing, and indeed, maintained that the sex with the victim was consensual. Thus, Henley demonstrated no remorse for his actions. The trial court further noted that Henley has a prior criminal record. While none of his prior convictions involve sexual offenses, the trial court noted that Henley had not responded favorably to probation with regard to a conviction for the improper handling of a firearm. The trial court also noted that Henley was convicted of four counts of Rape in this case. The Rapes were extremely violent, resulting in damage to the victim's anus and vagina. Finally, the trial court noted that Henley displayed extreme cruelty with regard to the victim. Henley taped the victim and repeatedly threatened to kill her. He used a knife to enhance those threats. He suffocated the victim with a pillow and later choked her with his hands. Henley also repeatedly stabbed the victim. Based upon these findings, the trial court determined that Henley was likely to commit future sexually oriented offenses.
 {¶ 74} We conclude that the record supports the trial court's decision to designate him a sexual predator. Thus, the Fourth Assignment of Error is overruled.
 VI {¶ 75} All of Henley's assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan, P.J., and Grady, J., concur.