[Cite as *State v. Johnson*, 2024-Ohio-2478.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-50 |
| | : | |
| v. | : | Trial Court Case No. 23 CRB 00130 |
| | : | |
| ASHLEY RENEE JOHNSON | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 28, 2024

. . . . . . . . . . .

DONALD K. POND, Attorney for Appellant

DANIELLE E. SOLLARS, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

**{¶ 1}** Defendant-Appellant Ashley Renee Johnson appeals from her conviction in the Xenia Municipal Court after a jury found her guilty of domestic violence in violation of R.C. 2919.25(A). For the reasons that follow, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} For more than two years, Johnson and R.A. were romantically involved. Soon after their relationship began, Johnson and two of her children moved into R.A.'s home in Xenia. Though the relationship began well, it went downhill due to infidelity and insecurity.

{¶ 3} R.A., a tow truck driver, returned home from work on the evening of January 30, 2023, got some dinner, and sat in the living room to watch television. Soon, Johnson's then-five-year-old son joined him, and the pair watched a movie together until R.A. got a phone call from a friend. According to R.A., the friend inquired about a particular car that had been towed that day. R.A. told the friend a story about a lady who wrecked her car coming around a curve, and as soon as R.A. mentioned the word "lady," Johnson came "walking in the room screaming 'what f*cking lady, is that your girlfriend?' " Trial Tr. at 29. He further explained to the jury that he had no idea who the person was: "It was just a lady. I didn't know who this lady was whatsoever. She just wrecked her car." Trial Tr. at 30.

{¶ 4} An argument ensued. R.A. testified that he got up to go to bed, and Johnson charged toward him and slapped him in the face. As he tried to walk past, Johnson spat on the back of his head and then slapped him on the back of the head. The first slap made a red mark on his face and the second, according to R.A., re-aggravated an old head injury and led to a headache that lasted three or four days.

{¶ 5} R.A. fled to his truck, locked the doors, and called the sheriff's department. Deputies arrived on scene a short time later, and after they interviewed the parties,

Johnson was arrested and transported to jail.

{¶ 6} On January 31, 2023, Johnson was charged by way of criminal complaint with domestic violence and assault, both misdemeanors of the first degree. At some point (though the record is unclear as to when) the State dismissed the assault charge. The case proceeded to a jury trial. After hearing testimony from R.A., Deputy Richard Elliott, Julianna Johnson (Johnson's daughter), and Johnson herself, the jury found her guilty of domestic violence.

{¶ 7} The court then ordered a presentence investigation and scheduled the disposition for August 7, 2023. Johnson was sentenced to 180 days in jail with 178 days suspended (subject to successful completion of probation). She was given credit for two days served. The trial court also ordered that she pay a $100 fine and court costs.

{¶ 8} Johnson has filed a timely appeal raising three assignments of error. We will address them in a manner that facilitates our analysis.

## II.    Sufficiency and Manifest Weight of the Evidence

{¶ 9} In her first and second assignments of error, Johnson argues that the guilty verdict was based on insufficient evidence and against the manifest weight of the evidence. Because these are related issues, we will address them together.

{¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A conviction based on legally insufficient evidence constitutes a denial of due process and will bar a retrial. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

{¶ 11} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387 quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 172 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs *heavily* against the conviction.' " (Emphasis added.) *Id.* "When engaged in this limited reweighing, the appellate court may not merely substitute its view for that of the trier of fact[.]" *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 25.

{¶ 12} "It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 35. This Court has said that it "will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent

that the trier of fact lost its way in arriving at its verdict." *State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 16.

{¶ 13} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 14} When reviewing claims based on the manifest weight of the evidence, we are required to consider all of the evidence admitted at trial, regardless of whether it was admitted erroneously. *See State v. Fleming*, 2d Dist. Clark No. 2021-CA-40, 2022-Ohio-1876, ¶ 27.

{¶ 15} In this case, to secure a guilty verdict for domestic violence, the State was required to prove that Johnson knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A).

{¶ 16} Our analysis begins with whether Johnson caused physical harm to R.A. "Physical harm means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Evidence presented at trial indicated that, after coming home from work on January 30, 2023, R.A. had a phone call with a friend in which he mentioned a "lady," which angered Johnson. R.A. told the jury that Johnson was

"pissed off and irate" and that she struck him on the right side of his face with her left hand and then slapped him again on the back of the head as he moved away. The first slap caused his face to turn red and the second caused a headache that R.A. testified lasted several days. Deputy Elliott also testified about the injury, telling the jury that he observed that the right side of R.A.'s face was "flushed like something possibly hit him or struck him." Trial Tr. at 66. Finally, Elliott told the jury that Johnson's five-year-old son told him that Johnson had slapped and spit on R.A. Based on the testimony from R.A. and Deputy Elliott, the jury could have reasonably found that R.A. suffered injury at the hands of Johnson.

{¶ 17} To obtain a conviction for domestic violence, it must also have been proven that Johnson and R.A. were "family or household members." In pertinent part, the statute states that a "family or household member" is a spouse, a person living as a spouse, or a former spouse of the offender. R.C. 2919.25(F)(1)(i). It is undisputed that Johnson and R.A. were never married, so the phrase "person living as a spouse" carries a great deal of importance; it is defined as a "person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). Cohabitation is the central element of the definition of a "person living as one's spouse." *State v. Woullard*, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 72 (2d Dist.).

{¶ 18} At the time of the offense, Johnson and R.A. had been in a romantic relationship and had lived together for at least two years. Johnson acknowledged that she

and two of her children lived with R.A. on January 30, 2023. The jury reasonably found that Johnson and R.A. were "family or household members."

{¶ 19} Johnson argues, though, that she did not strike R.A. At trial, she testified that although she and R.A. had been arguing all day, she did not hit or spit on him. That was consistent with what she told deputies on January 30, as Deputy Elliott testified that Johnson claimed "there was nothing physical." Despite the conflicting testimony, the jury did not lose its way. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24.

{¶ 20} Johnson also argues that R.A. did not suffer any injury because "an injury or impairment constitutes more than a temporary 'red mark' or 'flushing' on the cheek." She also asserts that his claim of a long-lasting headache "rings hollow [because] he sought no medical treatment[.]" Appellant's Brief at 13. We disagree. The "slightest injury is sufficient proof of physical harm." *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35 (1st Dist.). Even a slap that did not result in redness has been found to have caused physical harm. *State v. Hustead*, 83 Ohio App.3d 809, 615 N.E.2d 1081 (4th Dist.1992). The "physical injury" element was met even if the jury believed that R.A. had only a red mark or "flushing" on his face.

{¶ 21} The jury did not lose its way when it found Johnson guilty of domestic

violence, and the first and second assignments of error are overruled.

### III. Hearsay Testimony

{¶ 22} In her third assignment of error, Johnson claims that she was deprived of a fair trial because of the trial court's admission of alleged hearsay statements made by her five-year-old son and testified to by Deputy Elliott.

{¶ 23} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." A witness is prohibited on hearsay grounds from testifying to the statements made by another only when the statement is offered to prove the truth of the matter asserted in the statement, and where the statement falls outside of any exceptions to the rule against hearsay. *State v. Carter*, 72 Ohio St.3d 545, 549, 651 N.E.2d 965 (1995).

{¶ 24} Decisions regarding the admissibility of evidence are in the discretion of the trial court and will be upheld unless abuse of discretion can be demonstrated. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50. "Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2d Dist. Clark No. 2011-CA-21, 2012-Ohio-2664, ¶ 24.

{¶ 25} The State contends Deputy Elliott's testimony that Johnson's son told him that Johnson hit R.A. in the head and spit on him was admissible under the excited utterance exception to the hearsay rule pursuant to Evid.R. 803(2). An "excited utterance"

is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶ 26} For a purported excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event produced a nervous excitement in the declarant, (2) the statement was made while still under the stress of excitement caused by the event, (3) the statement relates to the startling event, and (4) the declarant personally observed the startling event. *State v. Hopkins*, 2018-Ohio-1864, 112 N.E.3d 98, ¶ 36 (2d Dist.). "The excited utterance exception to the hearsay rule exists because excited utterances are the product of reactive rather than reflective thinking and, thus, are believed inherently reliable." *State v. Ducey*, 10th Dist. Franklin No. 03AP-944, 2004-Ohio-3833, ¶ 17.

{¶ 27} Deputy Elliott testified that after Johnson was transported to jail, Elliott stayed to sit and play with the child. Elliott described the boy as being initially upset, so he sat with him, and the boy showed off his toys. After a while, and without prompting, the child stated that his mommy hit R.A. in the head and spit on him. Trial Tr. at 74. The exchange was captured on body camera video (State's Exhibit 1).

{¶ 28} As to whether the child's statements were admissible as excited utterances, the first, third, and fourth elements were satisfied. The assault was a startling occurrence, the boy's statements were related to the assault, and he had personally observed it. The question, then, is whether his "declarations were made before there had been time for the nervous excitement caused by the assault to lose its domination over [his] reflective faculties." *State v. Wallace*, 37 Ohio St.3d 87, 90, 524 N.E.2d 466 (1988). We conclude that the second element was met as well.

**{¶ 29}** While the testimony is unclear exactly how much time had passed (Deputy Elliott testified that he "sat with [the child] for a long time"), the body camera video gave a good indication of the temporal proximity of the statement of the child to the incident. At the one hour and two-minute mark of Deputy Elliott's body camera video (which started recording upon arrival), Johnson's son spontaneously recounted that "I saw Mommy hit [R.A.] right here [pointing to his head] and spit at him." When you combine that information with R.A.'s testimony that deputies arrived 15 or 20 minutes after he called for them, we can surmise that Johnson's son told Elliott what happened about 90 minutes after the incident.

**{¶ 30}** Although this was not a completely contemporaneous declaration, testimony and video evidence confirm that it was "out of the blue," and cases involving young children focus on the spontaneity of the statement, not the progression of time after the startling event. *In re D.M.*, 2004-Ohio-5858, 822 N.E.2d 433 (8th Dist.). *See State v. Wagner*, 30 Ohio App.3d 261, 508 N.E.2d 164 (8th Dist.1986) (three-year-old victim's statement made calmly the day after the event while mother was giving him a bath was an excited utterance); *In re D.M.* (child made spontaneous statement while calmly playing with his trucks the day after the incident); *State v. Duke*, 8th Dist. Cuyahoga No. 52604, 1988 WL 88862 (Aug. 25, 1988) (spontaneous statement of a three-year-old child ten days after incident constituted an excited utterance). Considering the timeframe and spontaneity of the child's statement, we find, like the trial court, that it was an excited utterance. The decision was not an abuse of discretion.

**{¶ 31}** The third assignment of error is overruled.

## IV. Conclusion

**{¶ 32}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.