OPINION
{¶ 1} Defendant-appellant Jeffrey A. Brown, Sr., appeals from his conviction and sentence on counts of Kidnapping, Rape and Robbery, involving one victim, and a count of Abduction, involving a different time, place and victim. Brown contends that the trial court committed plain error by failing to merge the Kidnapping and Rape convictions, and that the trial court abused its discretion by denying his motion to sever the Abduction count from the other counts for purposes of trial.
 {¶ 2} We conclude that the requirement that the Kidnapping and Rape counts be merged was not so obvious as to serve as a basis for plain error. We also conclude that the trial court did not abuse its discretion by denying Brown's motion to sever the Abduction count from the other counts for purposes of trial, because the proof of each offense was simple and direct, and the evidence of the later Abduction offense would have been admissible to prove the identity of the perpetrator of the earlier offenses, since a bicycle used by the perpetrator in the later Abduction offense was recovered, and was identified by the victim of the earlier offenses as the same bicycle used by the perpetrator of those offenses. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In the summer of 2003, in the early morning hours, M.W. was walking home. She stayed in the street, because the sidewalk was not in good condition, and the street was better lighted. She noticed a person on a bike going in the opposite direction. She then heard a noise behind her, and saw, out of the corner of her eye, something hit the ground. As she turned to see what was happening, a man attacked her, grabbing her from the front of her shirt.
 {¶ 4} M.W. was forced by her attacker away from the street and back into some bushes. At one point, M.W. tripped over the bike, and was forced to lie down on the grass. She got a good look at the bike, noticing that it was a mountain-style bike, in a two-tone color scheme, with one light color and one dark color, a rack, a black bag, and a padlock.
 {¶ 5} M.W.'s assailant told her not to look at him. He had a strong smell of alcohol. He vaginally raped M.W., and then forced her to perform various sexual acts. While M.W. was being sexually assaulted, her assailant had conversation with her:
 {¶ 6} "He just kept saying that I was going to enjoy it and didn't it feel good; and I had started to cry, and he stopped. He says, `Don't cry. You're gonna make me angry.' And he kept asking me questions about myself, what my name was, if I had any kids, or if I had a boyfriend, if my boyfriend satisfied me in bed. It was almost like he was having a normal conversation with a person."
 {¶ 7} The conversation persisted throughout the entire assault, except for one period when the assailant thought he heard a car or something.
 {¶ 8} Following the assault, M.W.'s assailant looked through her purse and took some money and medications, before leaving.
 {¶ 9} A little less than a month later, during the afternoon hours, H.D. was walking along a different road when she heard a bicycle, and a man ran up behind her and grabbed her around the neck and told her to walk with him. H.D. got a good look at her assailant, whom she later identified as Brown. She smelled alcohol on Brown.
 {¶ 10} Brown attempted to push H.D. down into some grass or tall bushes, but H.D. was able to bite and scratch Brown, escape, and run out into traffic. About fifteen minutes later, H.D. identified Brown, who had been apprehended and brought to the scene, as her assailant. The bicycle used by Brown was also recovered and identified by H.D., who had had a good look at it.
 {¶ 11} The bicycle recovered and identified by H.D. was later shown to M.W. Although M.W. had not been able to identify her assailant from a photographic lineup, she immediately recognized the bicycle:
 {¶ 12} "Q. Now, when you went down to the sheriff's department and met with Detective Meyers — did they stake [sic] you — or Detective Meyer, did she show you some bikes?
 {¶ 13} "A. Yes, she did.
 {¶ 14} "Q. Tell me a little bit about that.
 {¶ 15} "A. We had discussed — she told me that they had some bikes that they wanted me to see to look at and see if I could pick out one similar in style or make and model as the one I was attacked with.
 {¶ 16} "Q. Now, do you remember — did she tell you, hey, we got the bike or did she tell you in this case like that?
 {¶ 17} "A. No, she just said she had some bikes she wanted me to look at.
 {¶ 18} "Q. Did you look at some bikes?
 {¶ 19} "A. Yes, Detective Meyer took me and my fiancé down to an area, a little hallway where they had two or three bikes standing or lined up.
 {¶ 20} "Q. Okay. When you went down to that hallway, did you recognize any of those bikes?
 {¶ 21} "A. I recognized that bike immediately.
 {¶ 22} "Q. Okay. When you say that bike, are you talking about State's Exhibit A?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. Or excuse me, State's Exhibit B?
 {¶ 25} "A. Yes.
 {¶ 26} "Q. And that is the bike here in court, isn't it?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. What about it did you recognize immediately?
 {¶ 29} "A. The rack with the padlock.
 {¶ 30} "Q. Is this State's Exhibit A — State's Exhibit B, is this the same bike that the man who raped you rode?
 {¶ 31} "A. Yes, that's the bike that I tripped over the night I was raped. That is the bike."
 {¶ 32} M.W. also later identified Brown's voice from a voice "line-up" in which she listened to six tapes of the voices of men, all of whom, including Brown, were African-American.
 {¶ 33} Brown was charged by indictment with one count of Kidnapping, one count of Rape, and one count of Robbery, all stemming from the incident in which M.W. was a victim, and one count of Abduction, stemming from the incident in which H.D. was the victim. Brown moved to sever the Abduction count from the others, for purposes of trial, but his motion was overruled. Following a jury trial, Brown was convicted on all counts, and sentenced accordingly.
 {¶ 34} From his conviction and sentence, Brown appeals.
 II {¶ 35} Brown's First Assignment of Error is as follows:
 {¶ 36} "THE TRIAL COURT VIOLATED THE PROHIBITION AGAINST DOUBLE JEOPARDY AND OHIO STATUTORY LAW WHEN IT IMPOSED A CONSECUTIVE TEN-YEAR SENTENCE ON MR. BROWN FOR THE CRIME OF KIDNAPPING IN ADDITION TO THE SENTENCES FOR THE ALLIED OFFENSES OF RAPE AND ROBBERY."
 {¶ 37} Brown did not move to have his Kidnapping and Rape convictions merged, object to the failure of the trial court to have merged these two convictions, or otherwise bring merger issue to the trial court's attention. Therefore, as Brown notes in his brief, this assignment of error is governed by the plain-error standard of appellate review.
 {¶ 38} In his brief, Brown asserts that the prohibition against double jeopardy found in the Fifth Amendment to the United States Constitution is codified in R.C. 2941.25. In our view, a more correct explication of the relationship between the federal Double Jeopardy clause and R.C. 2941.25 is that: "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended," and "simply because two criminal statutes may be construed to proscribe the same conduct * * * does not mean that the double jeopardy clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes."Missouri v. Hunter (1983), 459 U.S. 359, 366, 103 S.Ct. 673,74 L.Ed. 2d 535. In other words, an Ohio court may impose multiple criminal sanctions for the same act, so long as it is clear that the Ohio General Assembly, in enacting the applicable statutes, intended that result. The analysis in this case is the same: if Brown's convictions are not required to be merged by R.C.2941.25, then he may be convicted and sentenced on all of them without offending the Double Jeopardy clause.
 {¶ 39} R.C. 2941.25 requires the merger of two or more convictions if: (1) they are not of dissimilar import; (2) they are not committed separately; and (3) they are not committed with a separate animus.
 {¶ 40} We first agree with the State that, under the factual circumstances in this case, the Kidnapping and Robbery offenses are not allied offenses of similar import. When Brown robbed M.W. by going through her purse and taking money and medications, he had possession of her purse, and was no longer dependent upon restraining M.W. of her freedom of movement in order to commit the Robbery. The Rape offense, which arguably necessarily involved M.W.'s asportation and restraint, at least to some extent, had already been completed.
 {¶ 41} The issue of whether a Kidnapping conviction must be merged with a Rape conviction is notoriously fact-sensitive and difficult. "To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings."State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. If the trial court erred, in the case before us, by failing to merge the Kidnapping and Rape convictions, that error is anything but obvious. See State v. Henley, 2005-Ohio-6142, ¶¶ 42-43.
 {¶ 42} We conclude that the trial court did not err in failing to merge the Robbery and Kidnapping convictions, and that if the trial court erred in failing to merge the Rape and Kidnapping convictions, that error was not so obvious as to rise to the level of plain error. Brown's First Assignment of Error is overruled.
 III {¶ 43} Brown's Second Assignment of Error is as follows:
 {¶ 44} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO SEPARATE THE TRIAL OF COUNT FOUR FROM THE TRIAL OF COUNTS ONE, TWO AND THREE — EACH CASE WAS BASED ON SEPARATE CIRCUMSTANCES AND VICTIMS SO THAT NO MODUS OPERANDI CAN BE IDENTIFIED."
 {¶ 45} Brown recognizes that the issue is whether the trial court abused its discretion when it denied his motion to sever the Abduction count from the other counts for the purposes of trial. Brown cites State v. Schaim (1992), 65 Ohio St.3d 51,58, 600 N.E.2d 661, for the proposition that the applicable test is: (1) whether evidence of the other crimes would be admissible if the counts were severed; and (2) if not, whether the evidence of each crime is simple and direct.
 {¶ 46} We tend to agree with Brown that the modus operandi involved in the two offenses, the behavioral fingerprints, in other words, are not so similar that the evidence used to prove the Kidnapping, Rape and Robbery counts could properly be used to prove the Abduction count. But the proof of the Abduction count was so simple and direct as to be almost overwhelming, so we see no error in that direction.
 {¶ 47} In the other direction, the evidence of the bicycle used by the perpetrator, and recovered at the scene, in the Abduction offense, would be admissible proof in the trial involving the Kidnapping, Rape and Robbery counts. Not as a behavioral footprint, but as a piece of tangible evidence linking the perpetrator of the Abduction offense to the perpetration of the Kidnapping, Rape and Robbery offenses. Because M.W. positively identified the bicycle recovered in the Abduction offense as the one used by the perpetrator of the offenses against her, the bicycle was probative evidence of the identity of the perpetrator of the offenses against her. Evidence of other acts of wrongdoing is admissible if it tends to establish the identity of the perpetrator. Barnett v. State (1922),104 Ohio St. 298, 135 N.E. 647; Evid.R. 494(B); State v. Smith (1992),84 Ohio App.3d 647.
 {¶ 48} We conclude, therefore, that the evidence of the bicycle used in the commission of the Abduction offense would have been admissible in the trial of the Kidnapping, Rape and Robbery counts, and that the evidence used to prove the Abduction count was sufficiently simple and direct that it was not an abuse of discretion to join the Kidnapping, Rape and Robbery counts to the Abduction count for purposes of trial.
 {¶ 49} Brown's Second Assignment of Error is overruled.
 IV {¶ 50} Both of Brown's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Grady, J., concur.